464

## In re RIEMENSCHNEIDER.
### Patent Appeal No. 3154.

Court of Customs and Patent Appeals.
June 5, 1933.

Justin W. Macklin, of Cleveland, Ohio (Louis W. Helmuth, of Cleveland, Ohio, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

By appeal appellant brings to this court for review a decision of the Board of Appeals of the United States Patent Office, affirming the decision of an Examiner, requiring cancellation, as containing new matter, of one claim (No. 39), and rejecting, for want of invention in view of the prior art, nine other claims (Nos. 32–38, inclusive, and No. 40) of an application for patent, bearing the title, "Improvement in Method and Apparatus for Welding Hot Metal Stock."

Two claims (Nos. 30 and 31), the phraseology of which seems to have been largely sug-

gested by the Examiner, were allowed by the Examiner, and these, it was held, embrace the only patentable features in appellant's application.

There was no appeal to this court from the order to cancel claim No. 39. So that is not before us, and we are concerned only with the eight that were rejected. All eight of these are apparatus claims, the method claims, which we understand were allowed, having been embraced in a companion application filed at the same time of the filing of the application here at issue.

Each claim contains some specific limitation or limitations not found in any one of the others, but claims 32, 33, and 34 seem to be generally typical:

"32. In an apparatus for welding the edges of traveling stock material, means to move into and hold said edges in substantially parallel abutting relationship to form a seam cleft, and means for producing an elongated and substantially continuous heating zone at and parallel to said seam cleft for heating said edges, said means including a plurality of arc producing devices positioned along the path of movement of said edges as closely together as is commensurate with efficient electrical action thereof, and means to move said edges relatively together to form a weld.

"33. In an apparatus for electrically welding the edges of traveling stock material having the edges in substantially parallel abutting relationship to form a seam cleft, means for holding said edges in said relationship, a plurality of electric arc producing devices for heating the edges to be welded, said arc producing devices being positioned along the path of movement of said edges as closely together as is commensurate with efficient electrical action thereof to form an elongated heating zone, a welding shoe supporting the underside of the stock and positioned across the seam cleft and extending within said heating zone, and means to move said edges relatively together to form a weld.

"34. In an apparatus for electrically welding the edges of traveling stock material, means to move said edges in substantially abutting relationship and to hold said edges in said relationship, a plurality of electric arc producing devices for heating the edges to be welded, said arc producing devices being positioned along the path of movement of said edges and in such closely spaced relationship that the arcs from said arc producing devices form an elongated continuous electric arc extending along the seam cleft formed by the

edges for raising the temperature of the edges continuously, and means to move said edges relatively together to form a weld."

The brief for appellant states that there "are principally four groups of elements," in all the rejected claims taken together, "each having certain characteristics" which the brief describes as follows:

"(1) *Means for moving* the traveling stock material, that is, the pipe forming, or in other words, the pipe forming means bringing the edges in substantially abutting relationship.

"(2) *A group of closely associated arcs,* placed directly over the seam cleft to virtually form an elongated continuous arc so as to produce a long narrow heating zone.

"(3) *Moving and closing means,* to bring the heated edges toward each other to unite them and form the weld.

"(4) *A shoe or dam* under the seam cleft to support the molten metal in the long narrow pool, preventing it from falling through the seam cleft." (Italics quoted.)

Eight references are cited as follows: Ries, 1093010, April 14, 1914; Smith, 1298590, March 25, 1919; Sessions (Re.), 14927, July 17, 1920; Knoll, 1381647, June 14, 1921; Anderson, 1402996, Jan. 10, 1922; Anderson, 1402997, Jan. 10, 1922; Fay, 1435919, Nov. 21, 1922; Hand, 1739757, Dec. 17, 1929.

At the hearing before this court, by consent of the court and of the parties, a demonstration of the operation of the device was given through the medium of moving pictures.

These pictures purported to show the complete operation, including some features not here involved. The demonstration showed the production, from flat metal strip, of the tubing intended to be welded, including its passage over forming rolls about a mandrel under a plurality of heat sources, the heat sources being described in some of the claims as "electric arc producing devices" spaced in a relationship as expressed in different forms of phraseology in different claims. Certain claims, for example, speak of their being positioned "as closely together as is commensurate with efficient electrical action thereof." When the metal strip, or stock, has been brought to the tubular form and is ready for the welding operation, it shows a longitudinal seam, cleft upwardly, supported on a welding shoe. As the tube moves under the heat sources, or electrodes for melting the edges, the temperature is gradually increased until the molten material takes the form of a long, narrow pool, extending along in the fissure, or seam cleft. This molten pool is held in the seam cleft by being supported beneath by the welding shoe and supported at the sides by the edges. In this condition the tube passes between welding throat rolls which force the edges of the seam cleft toward each other to form the weld by means of the molten material. In its further passage the tube is engaged by rollers designed to roll down the weld and bring the tube to its finished contour.

Other mechanism, not in issue here, is designed to cut the finished tubing into the lengths desired.

Although the device for tube making is, in its entirety, a quite elaborate mechanism, it should be borne in mind that the claims here at issue relate only to a limited part thereof, to wit, the combination of mechanical features having solely to do with the welding process.

It is conceded that no one of the references of itself discloses appellant's combination, and appellant's brief says: "* * * The Primary Examiner held that by combining five to eight prior patents he can obtain an apparatus similar to, although not exactly like, appellant's, and concluded that this, the appellant's invention, as defined by the claims here involved, was all obvious from the prior art. We contend that the Board was in error in sustaining this view."

It was held by the Board of Appeals that claim 32 would read upon both the Anderson patents, except that Anderson shows acetylene torches instead of electrodes. As to this, it was pointed out that appellant's specification spoke of different heat sources. It is noted by us that the specification says: "* * * As described, I do not intend to limit myself to any specified source of heat or any particular number or arrangement of heating units."

It was further pointed out by the Board that both Ries and Smith "disclose the use of the electric arc in welding pipe seams in the same general way as in the present case."

It is not disputed that this is so, but it is insisted that neither Ries nor Smith teaches the spacing of the heat sources as it is taught by appellant.

First, it may be said that Anderson apparently does show his acetylene jets positioned in a relation very like the relation of appellant's electrodes, as shown in his (appellant's) drawings, and appellant states, as quoted supra, that he does not intend to limit himself either as to heat sources, or as to

number or arrangement of heating units. Second, in view of what, it seems to us, the prior art obviously teaches about the use of heat sources and their spacing, we fail to discern wherein the phraseology *of the claims,* which latter are the measure of the invention, describes anything new in the art of welding the seams of elongated tubes.

There certainly is nothing definite taught by the phrase "positioned * * * as closely together as is commensurate with efficient electrical action thereof," appearing in claim 32. It seems to us that this does no more than say to the public, in effect: "By spacing electrodes in some way not defined you can obtain a certain result; that spacing must be such as 'is commensurate with efficient electrical action thereof'; we may know what it is but we do not teach it to you; find out by the use of your own skill what it is." And, were patent granted, there could be added: "Remember when you do ascertain it, we have a combination apparatus patent of which it is a part."

Appellant insists, however, that the phraseology of claim 34, supra, is sufficiently definite, because it teaches that the relationship of the arc-producing devices must be such as "to form an elongated continuous electric arc extending along the seam cleft." Upon close analysis, we are of the opinion that, after all, this phrase is, but little, if any, more definite in its teachings than is that of the above-quoted phrase in claim 32. But, even were we otherwise impressed, we should still find it quite difficult to rebut the correctness of an observation in the decision of the Examiner, saying: " * * * There is no invention in doing that which is old and which plain necessity demands as a matter of practical expedience."

We are of the opinion that no invention is expressed in that feature of the claims for which patent could be granted per se.

The feature just discussed, described in the quotation from appellant's brief, supra, as "a group of closely associated arcs," is characteristic of each of the claims, and it is the feature most strongly emphasized in the oral argument before us as giving patentability to the combination, but the three other group features as quoted, supra, from appellant's brief, must be considered also.

Without going into details, we think each of these features is shown, in essential substance, in the prior art, and that, as individual features, they are clearly anticipated. Smith shows an elongated pool of molten metal, and teaches extrusion of such metal, carrying with it a certain amount of slag, as a result of pressing the edges together. The carrying of slag with the extruding molten metal was the subject of comment in the oral argument before us; it being suggested as a new result of appellant's device. "Means for moving the traveling stock material," mentioned in appellant's first group, supra, for the purpose there defined, and "moving and closing means" for bringing edges together for welding, mentioned in the third group, supra, are shown in more than one of the references.

A "shoe" for holding molten metal, called for in claim 33 and others, seems to be shown by at least five of the references. True, none shows a shoe used in exactly the relation as that in which the shoe of appellant is used, but the purposes are the same in all, and the feature in each is made to conform to the necessities of each device.

We fail to find any feature in appellant's claims which, as a feature, standing alone, is not, in its actual substance, anticipated in one or more of the references relied upon by the tribunals of the Patent Office.

However, we are not unmindful of the fact that appellant is not, in this application, seeking patent upon specific features, by themselves, but that his are combination claims, and that if, in the combination, he has something inventive over the prior art, he is entitled to patent therefor, even though the emphasized features are found not patentable, in themselves, or even if all are old, or all are new, or some old and some new. It is the combination which we must consider, and, in the final analysis, the question, in this case, is whether appellant exercised invention in combining features, some of which are shown patented in the prior art and some of which are the result of mere skill, in the manner called for by the claims.

There is certainly no disposition on the part of this court to underrate or undervalue appellant's contribution to the art. That his device is valuable seems apparent, and that each of the elements of the references corresponding to each of the specific features of his application, above discussed, had to be modified in some degree to attain his combination, seems likewise apparent. Combination applications such as that at bar always present points of difficulty to the court.

The general and well-known rule is that, if features transferred from prior art into new combinations do not, in combination, produce results differing from the results produced by each in their old relation, the new

combination does not present patentable invention.

The grounds upon which this rule rests are obvious. A patentee and, after the patent expires, the public as well, is entitled to all the legitimate uses to which an invention is adapted, and it is as much the duty of the tribunals of the Patent Office and of the courts to see that the rights of patentees and the public are safeguarded as it is to see that actual invention is rewarded.

Applying the rule to the case at bar, we think it must be held that the modifications made by appellant of such features of the prior art as are definitely defined in his claims were not the result of invention but of skill, and that they are not rendered patentable by combining them, as modified, with another feature, which, when carefully analyzed, teaches nothing more than that, by experimentation, one can learn how to obtain a certain result.

The decision of the Board of Appeals is affirmed.

Affirmed.